## LYNCH AND ANOTHER v. BAXTER AND WIFE, ADM'X.

An administrator's sale is a judicial sale and operates *in rem*. In such cases it is a general rule that *caveat emptor* applies, and the purchaser takes his purchase without warranty, express or implied; and if the administrator gives the purchaser a bond for a warranty title, it is not in his capacity as administrator. (Note 93.)

*Quere* whether the administrator would be personally bound in such a case.

A vendee cannot resist the payment of the purchase-money, on the ground of defect of title in the vendor, while he retains the title bond and continues in possession of the land.

Where the vendee gives his note for the payment of the purchase-money, and goes into possession, there being no further contract in writing, he cannot avoid the payment, notwithstanding the statute of frauds, if the vendor be able and willing to make title.

Where heirs are all of age, they can, by consent, partition the inheritance among themselves without the aid of the Probate Court; and if one be under age at the time, but acquiesce after coming of age, he will be bound.

A verbal partition of land, perfected by delivery of possession, was as valid under the Mexican law as if evidenced by writing.

A bond for title and possession of the land, title or no title, are a sufficient consideration for a promise to pay money, where the defendant does not offer to surrender the bond and possession of the land.

The proceedings of the Probate Court cannot be collaterally impeached for an omission to disclose on its records an observance of everything enjoined by statute, upon the ground that it is a court of limited jurisdiction. (Note 94.)

It is not necessary that the record should show a necessity for a sale of real estate, although a sale be ordered and made without any necessity existing at the time the order was made for such sale; nevertheless, that order is conclusive until it be set aside by proceedings having that object directly in view; and the purchaser, having purchased without fraud or collusion with the administrator, will be protected by the sale, if the decree under which it was made be the decree of a court of competent jurisdiction.

The Probate Court, in the settlement of succession, proceeds *in rem*; and in a collateral proceeding the only objection which can be made to its judgments or orders is the objection for the want of jurisdiction.

*Quere* whether or not it is necessary for the record of the Probate Court, on appeal, to disclose an observance of everything enjoined by statute.

A party who produces a transcript of part only of the proceedings of the Probate Court in the settlement of a succession cannot object to those proceedings because the record does not disclose that certain things were not done which ought to have been done; for if he had produced a copy of all the proceedings, it would probably have appeared that those things were done.

The twenty-ninth section of the act of 1849, regulating the duties of Probate Courts and the settlement of successions, did not require that the perishable [432] and personal property other than slaves should be sold before obtaining an order for the sale of slaves or real estate; but it was the duty of the administrator, as soon as he ascertained, by sale or otherwise, that the personal property was not sufficient to pay the debts and the expenses of the administration, to apply for an order for the sale of slaves or real estate; and if the personal property had not been sold, it was competent for the court to include in the same order directions for the sale of the personal property and as much of the real estate or slaves as would be necessary to pay the debts and expenses of administration.

Appeal from Washington county. The appellees sued the appellants on a note of hand, dated October 5, 1841, due twelve months after its date, payable to Walker C. Cooper, administrator of James Hensley, deceased. The petition alleged that the said note was given for the purchase-money of a tract of land sold by the said Cooper, as administrator of the said Hensley, deceased, at an administration sale, as the property of the succession of the said Hensley, deceased, on the said 5th day of October, 1841, and that the said Lynch then became the purchaser thereof. The death of Cooper, the first administrator, was suggested, and the grant of the administration *de bonis non* to Mrs. Baxter, and her intermarriage with Baxter. They prayed process and judgment, &c. The defendants first filed an answer denying the allegations in the petition. They subsequently amended and pleaded specially, admitting the note sued on was given for the land, &c., and making a bond for title given by Cooper, former administrator, a part of their plea, and alleging that title, though often demanded of the said Cooper and of the said plaintiffs, had not been made; that title cannot be made by them, because the title is in the heirs of the said James Hensley, deceased, and not in the administratrix; and that the consideration for which the note sued on was given has failed. And in a second amendment of their answer they said the land was not the property of said James Hensley, deceased, but was the undivided estate of J.

## Lynch v. Baxter.

H. Hensley, and belonged to his heirs, consisting of children, &c., and the children of the said James Hensley, deceased, the said Cooper's intestate; and therefore the said Cooper could not sell the said land.

[433] Johnson Hensley, a witness for the defendants, swore that there was no such person as J. H. Hensley; that the land in question was part of the headright of Harmon Hensley, father of plaintiffs' intestate and of witness; and that the said Harmon Hensley died some time early in the year 1834, leaving several heirs, all of age, except one, Margaret, about fifteen years of age; that in November of the same year the children of said Harmon Hensley agreed to divide the said land, by metes and bounds, in equal parts. Witness could not say whether the partition was in writing. The best lot was given to the said minor Margaret. She married in 1835, and she and her husband sold it to plaintiffs' intestate. The said Margaret and her husband and all the heirs, since 1834, have acquiesced in the partition and have used and enjoyed the parts allotted to them. The defendants then offered in evidence a copy of the petition of Cooper, administrator of Hensley, praying an order of sale, and the decree of the probate judge rendered on the petition. The petition represents the perishable property as worth about $500, and that the debts already presented and allowed amount to $1,200, besides the expenses of the administration, and prays an order of sale of the perishable property, and as much of the real estate as shall be of value sufficient to pay the debts and expenses of administration. The petition is sworn to by the administration. The decree of the probate judge is made in conformity with the prayer of the administrator. There was a verdict and a new trial; the case was afterwards submitted to the judge, the parties waiving a jury trial; judgment for the plaintiffs; from which the defendants appealed.

The errors relied on were—
1st. That the land did not belong to the estate of the administratrix's intestate, and that the plaintiffs, the administratrix, could not make title.
2d. That the decree of the probate judge ordering the sale was a nullity and absolutely void, and that consequently [434] Cooper, the administrator, had no right to sell the land under such void decree.
3d. That the covenant in the bond and the note sued on being dependent on each other, the action could not lie.

*Webb*, for appellant.

I. Upon the first point the testimony shows that the land was a part of the headright league of Harmon Hensley, and that after his death his heirs, of whom James Hensley was one, verbally agreed to a partition between themselves, one of them being a minor; that they made the partition according to the agreement, and each one of the heirs claimed in severalty the parts allotted to him; and that the part which fell to James Hensley was the land sold by his administrator, Cooper, to Lynch, for which the note sued on was given. This partition, it is insisted, was illegal, and the whole of the heirs remained as well after as before it, joint tenants in each and every parcel of the league of land; and consequently, if the administrator has conveyed the land to Lynch, the other heirs might sue for and recover from him their portion of it. (4 vol. Laws, p. 122. secs. 38, 39, 40; 7 Mass. R., 488; 12 Mass. R., 520.)

II. The judgment of the Court of Probate of Austin county, under which the land was sold, was in evidence before the court in Washington in this case, and it shows upon its face that the Probate Court had no jurisdiction over the subject-matter at the time the order to sell the land was made. The judgment, therefore, was *coram non judice*. A Probate Court has no authority to order a sale of real estate except it be for the payment of debts, in default of personal estate, or for distribution, and not even for the payment of debts, until it shall be shown that the personal estate is exhausted. (4 Laws, p. 119, sec. 29.) The petition to the Probate Court by the administrator for an order

Lynch v. Baxter.

to sell the land of Hensley shows that the personal estate had not been exhausted or applied to the payment of the debts. The court therefore [**435**] had no jurisdiction to entertain it and the judgment rendered upon it was *coram non judice*, and void. (1 Ala. R., 25; 3 Ala. R., 153; 5 Stew. & Port. R., 441, 449; 8 Port. R., 99, 100, 101, 361, 372; 2 Stew. R., 331; 5 U. S. Cond. R., 668; 1 Hill, R., 130; 5 U. S. Cond. R., 28; 8 Port. R., 466; 3 Barb. R., 341; 3 Mass. R., 253, 260; 7 Mass. R., 79; 2 Mass. R., 120, 124; 4 Mass. R., 117, 122; 16 Mass. R., 171, 178; 8 Pet. R., 375, 377; 3 Stew. & Port. R., 355.) The Court of Probate being a court of limited jurisdiction in respect to the sale of real estate, nothing is to be presumed in favor of it; everything essential to its jurisdiction must affirmatively appear. The necessity of the sale of the real estate could only be known after the personal estate was exhausted; and without that necessity was shown, the court had no jurisdiction to order a sale of the land. (1 Hill R., 130; 3 Pet. Cond. R., 7, 8; 2 Pirt. Dig., 19, sec. 9; 1 Pet. R., 340; 5 Pet. Cond. R., 672; 5 Cr. R., 173; 11 Ala. R., 110; 2 U. S. An. Dig., p. 83, sec. 14; 2 U. S. Dig., 249, arts. 46, 47, 48, 54, 55.)

*Munger*, for appellees.

I. The testimony of Johnson Hensley was objected to, and ought not to have been admitted. The transcript of part of the proceedings of the Probate Court was also objected to, and ought to have been excluded. (11 Mart. R., 608.)

II. Admitting the evidence, the judgment is correct. A parol sale of land was good under the Mexican law. (Scott & Soloman *v.* Maynard and Wife, Dallam, 551, and authorities there cited.) A parol partition would be equally good. If defective, in this case it has been perfected by acquiescence and the statute of limitations. (Laws, 1 vol., p. 156, sec. 39; Id., 5 vol., p. 167, secs. 15 *et seq.*; Tabor *v.* Johnson, 3 N. S., 674.) The possession of Lynch has not been disturbed; and he has no right to impeach his own title to defeat this action, at least without offering to give up the bond and the possession of the land. (Tabor *v.* Johnson, 3 N. S., 674; La. Dig., p. 574, Nos. 14, 16; Id., p. 595, No. 53.) There is no warranty [**436**] in judicial or administration sales; the decree protects the purchaser, (La. Dig., p. 642, Nos. 21, 22;) and the purchaser only gets the title of the intestate, be it good or bad. (3 U. S. Dig., p. 377, No. 474.)

III. It is contended by the appellants that the order of court to sell the real estate was a nullity. But not so. The statute is merely directory, and does not require the perishable property to be first sold before obtaining an order for the sale of real estate. Besides, the purchaser looks to the judgment only, not to the facts which authorize it. (Wheaton *v.* Sexton, 4 Wheat. R., 506; 4 Cr. R., 328; 1 Stark Ev., 217.) A judgment *in rem* is conclusive. Matters of probate are *in rem.* (1 Stark. Ev., 241; 2 How., U. S. R., 238.) It is not necessary for the record to disclose all the facts. (Grignon *v.* Astor, 2 How. U. S. R., 341; *Ex parte* Tobias *v.* Watkins, 3 Pet. R., 202; Kemp, Lessee, *v.* Kenedy, 5 Cr. R., 173; Thompson *v.* Tolmie, 2 Pet. R., 168, 169.)

The amended pleas of the defendants are but pleas of failure of consideration. The bond for warranty, title, and the possession of the land were sufficient consideration to support the promise in the note. (Bessy *v.* Pintade, 3 La. R., 488.)

*Lewis*, also for appellees. The Probate Court had jurisdiction of the subject-matter. In such cases its proceedings stand upon the same footing as the proceedings of the District Court. It is not the manner but the matter upon which a court is called to act that gives jurisdiction. (14 Johns. R., 289.) The court obtains jurisdiction by the plaint, or here by the petition. (2 N. Y. Dig., 1098; 20 Wend. R., 245, and cases there cited.)

The proceedings must show affirmatively jurisdiction. Thus, if a suit is brought before a justice of the peace, it must be shown that the debt or damage claimed is not over $100; if in the District Court, the petition must show

Lynch v. Baxter.

that the debt or damages is $100 or upwar and if the Probate Court, that it in relation to the estate [**437**] of a decedent, aud a lunatic, or some other of the specified cases in which that court was authori to act. The one under consideration shows that it is in relation to the estate of a decedent. It is no objection to the jurisdiction that the court received or acted on improper and insufficient evidence, or even without evidence. The law gave that court power to act, and directed its action in certain specified cases; and that court alone had the authority (in the first instance) to determine whether there was sufficient evidence before it to warrant its action. And if the court was mistaken or acted without the proper authority, the course, and the only one, to correct the error, if any exists, is by appeal. We are authorized to believe that the Probate Court had proper evidence to authorize the proceeding. The law did not require that the testimony should be taken down and preserved. In the probate law of 1840 there are precise and very minute directions given for the government of the court, but not a word as to the amount or kind of testimony. The 29th section only requires satisfactory proof; the 51st section of the same law gives particular directions on this subject for a particular class of cases; and why this distinction, if it is necessary in all cases?

LIPSCOMB, J.   The first and second objections taken by the appellant to the judgment of the court below may be considered together. The sale of the land was a judicial sale, and operated *in rem.*   In such cases it is a general rule that *caveat emptor* applies, and the purchaser takes his purchase without warranty express or implied; and if the administrator, in executing the order of the court, gives the purchaser a bond for a warranty title, it is not in his character as administrator, and he cannot bind the estate of his intestate by such a covenant.   As a personal undertaking between him and the purchaser, how far it would be valid is not now before us, and consequently we pass it by.   (9 Wheat. R., 616.)   But if considered independent of the circumstances of the sale in this [**438**] case, and if it was a case of individual private contract, the defense set up could not be available, because it is repugnant to the plainest principles of law and justice to allow this defense to be heard whilst the vendee holds on to the bond and continues in the possession of the land purchased. (11 Mart. R., 615.)   And had there been no contract in writing, and had it been a private contract between the vendor and vendee, and the vendee had given his note for the payment of the land and gone into possession, he could not avoid payment, notwithstanding the statute of frauds, if the plaintiff was able and willing to make title.   (Rhodes, Adm'r, v. Storr, 7 Ala. R., 346.)

But the evidence offered by the defendant in the court below entirely failed in establishing a superior outstanding title to that of the plaintiff's intestate. The evidence of Johnson Hensley, a witness, and the only one offered, [and he was introduced by the defendants,] proves that the land was a part of the headright league of his father, Harmon Hensley; that H. Hensley was also the father of the plaintiff's intestate; that the father died in 1834, leaving several children, all of whom were of age excepting one daughter about fifteen years of age; that shortly after the death of his father, the children, by consent, divided his land into equal shares; that they set apart the best allotment to the sister, who was a minor; that she was married in 1835, and that she and her husband had sold her share to the plaintiff's intestate; that each of the heirs had entered upon and enjoyed their several shares, and had acquiesced in the partition so made in 1834, and made no complaint.   The witness did not know whether the partition was by an agreement in writing or not.

The appellants' counsel supposes this partition was illegal and void, and to show that it is so refers to the act of Congress of the Republic of 1840.   The requisitions of that act, six years after the amicable partition, could not disturb rights growing up under it.   The parties, with the exception of one, were of an age to divide out the land that had descended to them, by consent, even if the act of 1840 or a law similar [**439**] in its terms had been in force at the time

the partition was made, and the other's acquiescence and confirmation after she was of age to act for herself would bind her.

There can be no doubt that at the time the partition was made a verbal sale of land between individuals was binding, and the contract as valid as if evidenced by writing. It was so decided by this court under the Republic. (Scott and Solomons *v.* Maynard and Wife, Dallam's Digest, 551, and the authorities there cited.) But if the law at that time had required that the partition should be in writing, it could not be disturbed now. The right to the respective shares, according to the partition, is now established beyond controversy by the statute of limitations.

Leaving the fact of the appellant Lynch being a purchaser at a judicial sale out of the question, and placing him in the more favorable position of a vendee under a private contract with Cooper, the bond he sets up in his plea and the possession of land would afford ample and legal consideration for the note sued on to entitle the plaintiffs to recover. We do not intend to be understood, in commenting on the evidence of outstanding title, to be considered as giving it our judicial sanction. If, however, it is objectionable, it is not for the appellants to raise the objection, as the witness was introduced by them, though objected to by the plaintiffs.

We now come to the last objection, and the one most relied on in the very able and ingenious argument of the appellants' counsel: that the decree·of the probate judge ordering the sale is a nullity. That the judgment, order, or decree of a court of general jurisdiction, on any subject to which the jurisdiction has once attached, however erroneous, defective, or irregular it may be, can never be questioned or avoided in a collateral way until it has been reversed, set aside, or revoked in a proceeding having that objection directly in view has been considered as well settled for the last century, and cannot be now disturbed. It has, however, been supposed by some that the proceedings of a court of limited jurisdiction are not entitled [440] to the same regard, and that the records of such courts must show a strict conformity to ·all the requisitions of law; and that unless they do show such conformity, their acts confer no rights and impose no obligations on any one, and may be treated, whenever and wherever presented, as entire nullities and void. Such is the position assumed by the appellants' counsel; and he contends that the decree of the probate judge ordering the sale of the land, for the purchase of which the note sued on in this case was given, is of that kind. The record of the probate court used in evidence on the trial below was introduced by the appellants, and does not purport to be a complete record of all the proceedings in that court in relation to the administration in which the order of sale was made. The appellants can therefore claim no advantage arising from the fact of its being only a part of the record.

The decree of the Probate Court ordering the sale of the land belonging to the estate of Cooper's intestate was made under the provisions of the 29th section of an act regulating the duties of Probate Courts and the settlement of successions, passed by the Congress of Texas at the session of 1840, and is in the words following: "Every executor or administrator is bound, within three months after his appointment, to petition the Court of Probate granting letters testamentary or administration for the sale of all the perishable property belonging to the succession, and all or such portion of the other personal property, except slaves, as may be shown to the court to be necessary for the payment of debts against said estate; and in case, or if on further information, he finds that the proceeds of the sale of the personal property will not be sufficient for the payment of said debts, he shall then, within six months after his appointment, or as soon as he ascertains the said deficiency, petition the Probate Court for the sale of the slaves and real estate of the decedent, or so much thereof as may be necessary for the payment of said debts; and the said court, on full and satisfactory proof of the existence of the debts and the necessity [441] of the sale, shall order the same on cash or credit, as may be

## Lynch v. Baxter.

most advantageous to said estate, or as the nature of the claims against said estate may require."

The record offered in evidence of the decree ordering the sale, supposed by the appellant to be so defective as to amount to a nullity, shows a petition on oath preferred by the administrator in the words following:

"To the Hon. John H. Money, Chief Justice of the county of Austin, and judge of probate for the said county:

"The petition of Walter C. Cooper, administrator of James Hensley, deceased, respectfully represents that there is about five hundred dollars' worth of property belonging to the succession, which he thinks is likely to be wasted unless the same should be disposed of. Your petitioner further represents that the debts already presented against said succession amount to about twelve hundred dollars and the expenses of the administration make it necessary to sell some of the real estate in addition to the perishable property belonging to the succession. Your petitioner would therefore pray your honor to issue your decree to sell the perishable property of the said estate, and so much of the real estate as may be necessary to satisfy the debts of the said succession and the expenses on the same; and as in duty bound your petitioner will ever pray.

D. Y. PORTIS, Att'y P. Q."

Which was sworn to in open court by Walter C. Cooper, the administrator, and attested by the clerk. Then follows:

"Walter C. Cooper's petition for the sale of the perishable property and real estate. In the Probate Court, May Term, 1841, the within petition having been read and considered, it is therefore ordered, adjudged, and decreed that Walter C. Cooper, administrator of the estate of James Hensley, deceased, proceed to sell all the perishable property belonging to the said succession at the late residence of the deceased, and that he also proceed to sell so much of the real estate belonging to the said succession as shall be of [442] value sufficient to pay the debts of the said succession and the expenses of administering the same.

J. H. MONEY, *Probate Judge A. C.*"

Then follows an order from a justice of the peace of Washington county, to three individuals, to appraise two tracts of land, part of the league of Harmon Hensley; the return of the appraisers; then the administrator's return of the account of sale of two tracts of land appraised, the first sold to Rebecca Allen and the second to J. R. Lynch, (one of the appellants,) amounting to $981.87. This return is sworn to by the administrator before the probate judge, and the order on the judge, as follows:

"Let the foregoing be admitted to record.    Oct. 28th, A. D. 1841.

J. H. MONEY, *Probate Judge.*"

The objections taken to the proceedings of the Probate Court just cited that will be noticed are: that the petition does not show a conformity with the law in this, that it does not show that the perishable property had been exhausted before applying to the Probate Court for an order of sale of the real property; that the record does not show the facts constituting the necessity for a sale of the real property; that the record should show the evidence by which the judge of the Probate Court acted in awarding the decree directing the sale of the real property; that the Probate Court being a court of limited jurisdiction, if the record does not disclose all the facts necessary to the exercise of its jurisdiction in giving its judgments and decrees, they are void.

The question how far a defective judgment, order, or decree of the Probate Court could be considered in a collateral matter has been much discussed in the Supreme Court of Alabama, in a case calling in question a sale of real estate by an administrator, in a suit brought for the same property by the heirs of the intestate, and in its principles and features in many respects similar to the case before us. By the statute of the State of Alabama, after an order of sale has been decreed, [443] the administrator is required to give bond to conduct the

sale according to law before he can obtain the order from the clerk of the Orphans' Court. In the case of Wyman *et al. v.* Campbell *et al.* (6 Port. R., 219) the Circuit Court charged the jury "that if the administrator had sold the real estate of his intestate without giving bond according to law, his proceedings were absolutely void." This charge was assigned as error in the Supreme Court of the State. In overruling the opinion of the judge of the Circuit Court and reversing the judgment, Chief Justice Collier discusses with great ability the right to question the judgment of the Probate Court, on account of any error or defects in such judgment, in a collateral inquiry. He puts the judgment of that court upon the footing of all other judgments; that the inquiry can only be, had the court competent jurisdiction to render such judgment? If it had, however erroneous it may be, that judgment cannot be controverted until it has been reversed or set aside by an appellate tribunal in a proceeding having that object directly in view. (Id., 241, 242.) The Chief Justice in adverting to the fact that the opinion he was then giving ran counter to the opinion of the court in Wiley and Gayle *v.* White and Lesley, that had been twice before the court, reported in 1st Stewart, 331, and in 3 Stewart & Porter, 335, proceeds: "The very great respect we entertain for the learning of the judges who concurred in the opinion in that case, and the propriety of upholding the doctrine of *stare decisis*, have induced us to give to this case a more careful and elaborate examination. Principles the opposite of those we have stated would be productive of the severest and most extensive injury. It is impossible to conjecture the vast amount of property held under sales made by order of an Orphans' Court, and we all know that in at least three-fourths of the cases the records are remarkable for their want of technicality and legal precision. Let the rule be established and continued which requires the record to disclose every material fact, and which makes indispensable to the passing of the title publication [444] of the petition to sell, the return of the sale, the execution of a bond by the administrator to the Orphans' Court, and everything else which the statute prescribes as preparatory to a decree, and a large majority of the titles acquired through such a channel would be overturned. In questions of doubt arguments drawn *ab inconvenienti* deserve great consideration. It is worthy of remark that the distinction between void and voidable judgments seems not to have been considered in the case of Wiley and Gayle *v.* White and Lesley; but it is assumed that the proceedings of the Orphans' Court may be collaterally impeached for an omission to disclose on its records an observance of everything enjoined by statute, upon the ground that it is a court of limited jurisdiction. This reasoning only proves the order to have been voidable, if the authority of the court was shown, and that it could not hold good on an appeal or writ of error, but does not show that it was void *per se*, so as to subject it to an indirect attack." Having participated in the case of Wiley and Gayle *v.* White and Lesley, it may be permitted me to bear testimony to the correctness of Chief Justice Collier's remarks, that although twice before the court, the distinction between void and voidable judgments was not presented or considered, but it was taken for granted that as the Orphans' Court was of limited jurisdiction, its judgment could be collaterally attacked. And at that time cases were not as well discussed as at a subsequent period. The remarks of the Chief Justice as to the extent of evil that would result from a different rule are most strikingly applicable to our own State. If irregularities in the Alcalde's Courts, in the Probate Courts of the Republic, and under the State organization could nullify the decrees and judgments, property would be unsettled to an extent far more distressing than can grow out of land titles emanating from different sovereignties.

I have been so forcibly struck with the practical good sense of the remarks of the Supreme Court of Ohio on this subject that I trust I shall be pardoned for introducing them here. In [445] the case of the Lessee of Goforth *v.* Longworth (4 Ohio R., 129) the court says: "It is held to be well settled that courts give a liberal construction to statutes authorizing sales of real estate by

executors and administrators. Public policy requires that all reasonable presumptions should be made in support of such sales, especially respecting matters *in pais.* The number of titles thus derived and the too frequent inaccuracy of clerks and others concerned in effecting these sales render this necessary. If a different rule prevailed, purchasers would be timid, and estates consequently be sold at diminished value, to the prejudice of heirs and creditors."

The doctrine we have been discussing was again presented in the Supreme Court of Alabama, at a more recent period, in Hilliard and Wife v. Binford's Heirs, (10 Ala. R., 977,) and Chief Justice Collier, reviewing and sustaining Wyman *et al. v.* Campbell *et al.,* held that where the record of the Orphans' Court recites " that a citation issued as required by the statute, and therefore orders that the will be admitted to proba ," it is a most voidable only, and cannot be collaterally impeached, but must be avoided, if erroneous, in a direct proceeding.

That the Probate Court has jurisdiction over the estates of deceased persons cannot be doubted; that this jurisdiction was brought into exercise directly upon the property, by the petitioner praying the decree for an order of sale of the land, is equally clear. The land was the subject-matter on which the court exercised its jurisdiction. Whatever might be the order, it was a question before a competent court, and its decision was subject to revision by appeal, but could not be attacked in a collateral way. That it was a proceeding *in rem* can be made manifest by supposing that the heirs of the intestate had sued Lynch, the purchaser, and attempted to show that this judgment or decree for the sale of the land was void because they had no notice and were not parties to the proceedings of the Probate Court. The answer would be that it was not necessary to make them parties, because the proceedings [**446**] were *in rem,* acting on the land directly, and that the decree of the court could not be collaterally attacked. If the sale was without any necessity existing at the time the order was made for such sale, still that order was conclusive until it had been set aside by proceedings having that object directly in view; and the purchaser, having purchased without fraud or collusion with the administrator, would be protected by the sale, if the decree under which it was made was the decree of a court of competent jurisdiction. This would come clearly within the rule laid down in Wyman *et al. v.* Campbell *et al.,* and the purchaser would not be affected by any irregularity in the proceedings or error in the judgment of the court in making that decree. All the vigilance the law would exact from him would be to see that the court making the decree had competent jurisdiction, and he could not be called upon to inquire whether the evidence before the judge of the necessity of the sale had been spread upon the record or not.

This would be decisive of the case, according to the principles discussed in the cases we have examined. It is said that a different rule has been laid down in New York, in the case of a proceeding before the Surrogate. If so, it is repugnant to the opinion of Chancellor Kent in Moore v. White, (6 Johns. Ch. R.,) and to the opinion of the Supreme Court of the United States in Thompson v. Tolmie, (2 Pet. R., 168,) and to the opinion of the Supreme Court of South Carolina in Gewas and Wife v. Brown *et al.,* (1 N. & McC. R., 329,) and to the whole course of the Alabama decisions since Wyman *et al. v.* Campbell *et al.,* already cited.

But suppose that the rule of law should be otherwise, and it was competent for the appellants in this case to call in question in this suit the correctness of the decree of the probate judge in ordering the sale, and we were now called on to reverse the decree as a case brought before us on appeal, for this is the effect of permitting the decree to be questioned, if it was made by a competent tribunal: would the appellants be in a better condition? For the purpose of answering [**447**] the question, we will again refer to the petition. It shows—

that is to say, it represents the perishable property to be insufficient to pay the debts, and asks an order or decree for its sale, and for the sale of the real estate, or so much as may be sufficient for the payment of the debts. The petition states the value of the perishable property and the amount of debts presented. The appellants, however, say that the value of the perishable property does not appear upon the record; that there ought to be better evidence; to which they may be answered very appropriately that the record, or part of the record offered in evidence, does not purport to be the whole record of the succession; that it is the evidence of the appellants, and if they had brought up the whole record, it would have been found that this perishable property had been appraised, and the appraisement properly returned, as required by law, into the Probate Court, and then admitted to record. The law required this to be done, and as it is not shown not to have been done—not even a presumption against it raised by the evidence introduced by appellants—we are bound to believe that it is so of record. It may be well said that if everything that the appellants insist should appear on the record really ought there so to appear, for aught that appears in evidence it is in the record. The appellants brought the regularity of those proceedings into the discussion, and as evidence offered the certified copy of the petition for a sale, the decree ordering the sale, the account of the sale returned by the administrator, and the order of the probate judge that it should be admitted to record; and the clerk certifies that it is a copy of these particular proceedings, and not that it is a complete transcript of the record of the succession. The same may be replied to the objection that it ought to appear on the record that the decree was based on other and better evidence of the amount of the debts against the estate than is found in the petition; that as the law required a return of all these debts to be made to the court, and also that as they were required by law to be presented to the judge for his approval, [448] we are bound to believe that all this was before the judge, and in this way he arrived at the conclusion that from the amount of debts and the appraised value of the perishable property, a sale of real estate was absolutely necessary for the payment of the debts and the expenses of administration. The judge of the Probate Court might, if so inclined, have entered his decree more formally and recited the nature of the evidence that produced the conviction in his mind that the estate was really indebted to an amount beyond the value of the perishable property, and that from the tableau of debts he was fully satisfied of the existence of these debts and the necessity of the sale; but the law does not require him to state the evidence or satisfactory proof by which he arrived at his conclusion; nor can we say that his failure to do so renders the decree a nullity, or that it was reversible.

But it was said the decree ordering the sale of the perishable property and the real estate under the same order is not in conformity to law; that no order could legally be made for a sale of the real estate until after the sale of the perishable property; and that there was no other means of ascertaining that there would be a deficiency of assets from that source to pay the debts. It is certainly very clear that the proceeds of the sale of the perishable property ought first to be relied on as the fund for the payment of the debts; and such was and is the meaning of the law; but there is nothing that would restrain the Probate Court from ordering the real property to be sold as soon as it was made to appear that there would be a deficiency from the perishable property. The section is exceedingly awkwardly expressed. After directing that the administrator shall petition; within three months from his appointment, for the sale of all the perishable property belonging to the succession, and all or such portion of the other personal property, except slaves, as may be shown to the court to be necessary for the payment of the debts against the estate, it then continues, with a *comma* after the word *estate*, "and in case, or if on further information, he finds that the proceeds [449] of the personal property will not be sufficient to pay the said debts, he shall then, within six months after his appointment, or as soon as he ascertains the deficiency, petition,"

&c. The most satisfactory construction that can be put on the clause or part of the section last quoted makes it his duty to petition as soon as the fact of the insufficiency is made apparent, without regard to the fact that the perishable property had not yet been sold. And in this case it was apparent that there would be such deficiency from the amount of debts presented and the small amount that could be realised by the sale of the perishable property. And on this being satisfactorily proved to the judge, we cannot perceive that there would be error in his decreeing the sale of both at the same time.

In fine, if the decree of the Probate Court was before us for revision, I could not say, from the presentation of the record, that it ought to be reversed. I am, however, very clearly of the opinion that if it was defective and erroneous and the error apparent, it could not be questioned by the appellants in this suit; that it could only be attacked by proceedings having that object directly in view; that is to say, to reverse or revoke it. It may be an erroneous judgment, but it is a judgment of a court of competent jurisdiction, and is safe from a collateral attack.

It will be perceived that from the view we have taken, even if the decree of the probate judge could be questioned in this suit, the judgment of the court below would be affirmed, because we discover no substantial errors or defects in that decree.

Judgment affirmed.

NOTE 93.—Edmondson v. Hart, 9 T., 554; Thompson v. Munger, 15 T., 523; Walton v. Reager, 20 T., 103.

NOTE 94.—Hart v. Horton, 12 T., 285; Poor v. Boyer, 12 T., 440; Dancy v. Stricklinge, 15 T., 557; Burdett v. Silsbee, 15 T., 604; Soye v. McCallister, 18 T., 80; Alexander v. Maverick, 18 T., 179; George v. Watson, 19 T., 355; Baker v. Coe, 20 T., 429; Giddings v. Steele, 28 T., 732; McCown v. Foster, 33 T., 241; Davis v. Wells, 37 T., 606; Newcomb v. Hall, 38 T., 561; Hudson v. Jurnigan, 39 T., 579; Harrison v. Oberthier, 40 T., 385; Kleinecke v. Woodward, 42 T., 311.

