WILLIAM E. G. SAUNDERS et al., Appellees, v. A. S. STULTS et al., Appellees; WAHKONSA INVESTMENT COMPANY et al., Appellants.

RECEIVERS: Right Acquired by Bidder. A bidder at a receiver's sale acquires no enforcible right until his bid has been accepted by the court.

*Appeal from Winnebago District Court.*—M. F. EDWARDS, Judge.

MAY 11, 1920.

REHEARING DENIED OCTOBER 23, 1920.

APPEAL from the action of the district court in refusing to confirm a sale made by its receiver. Opinion states the facts.—*Affirmed.*

*Kelleher, Hanson & Mitchell,* for appellants.

*E. A. & W. H. Morling, Gordon & Osmundson, Senneff, Bliss, Witwer & Senneff,* and *Cosson & Clarke,* for appellees.

GAYNOR, J.—Prior to the happening of the matters involved in this controversy, the defendants Stults had contracted to purchase 790 acres of land. Finding themselves unable to finance the purchase, they induced the plaintiffs, Saunders and the two Sopers, to do so. A contract was entered into between these parties, by the terms of which the land was to be sold, and the sum realized divided between them, in proportion to the interests of each, as fixed in the contract. It appears that a sale could not be effected within the time limited by the contract, and a disagree-

ment arose between them as to the price at which the land
should be sold. Thereupon, these plaintiffs brought this
action to terminate the joint adventure, and to have a
receiver appointed. After a hearing, the court found for
the plaintiffs, and appointed a receiver in the person of
one James B. Anderson. Anderson qualified, and gave bond,
and entered upon his duties as receiver. The decree was
rendered in October, 1918, and directed this receiver to
sell, convey, and convert into money all real estate and all
personal property covered by the joint enterprise, and to
do this as speedily as might be without sacrificing the prop-
erty. As to the real estate, the receiver was directed to
sell the same upon such terms "as are customary in the
locality in relation to real estate when sold in like
quantities at private or public sale." Thereafter, the
receiver endeavored to interest buyers in the property, from
time to time. The receiver fixed the price at $135, and
undertook to secure a purchaser at that price. He made
diligent effort to secure a purchaser. There is no complaint
of this. On or about May 26, 1919, the Wahkonsa Invest-
ment Company and Furlong & Brennan, after inspecting
the land, submitted a bid of $130. On May 31, 1919, the
receiver accepted the bid of these parties, and entered into
a formal written contract with them, in which he agreed
to sell and convey to them the land aforesaid at the price
of $130, and in the contract they bound themselves to buy
at that price, and to pay $10,000 down. The terms upon
which the Wahkonsa people were to purchase the property
were as follows: To pay for said land the sum of $102,700,
$10,000 in hand, and $30,000 in cash on March 1, 1920; to
assume mortgages on the land, amounting to $35,475; and
to give a second mortgage on the land of $27,225, the second
mortgage to bear interest at the rate of 6 per cent per
annum, payable annually from March 1, 1920. Shortly
after this contract was made, the receiver prepared a report
of this sale for submission to the court. The report, how-
ever, was not filed. Thereafter, and before any report was
made to the court of the sale aforesaid, the First & Second

Mortgage Corporation of Iowa presented a bid to the receiver of $145 per acre, with payments to be made on terms far more favorable to the parties interested than was provided in the Wahkonsa contract.

On the 21st day of July, 1919, the receiver filed a report, in which he advised the court of the sale of the land to the Wahkonsa people, and also advised the court of the offer made by the mortgage corporation, and requested such action by the court on his report as might be just and proper. The Wahkonsa people moved for a confirmation of the sale to them. Objections were filed to its confirmation on various grounds, among which were that the sale price was far less than the actual value of the land, and that the manner and times of payment were inequitable. After hearing was had upon this motion and the objections thereto, and after evidence was introduced, the court refused confirmation of the sale to the Wahkonsa people, and directed the receiver to accept the bid of the First & Second Mortgage Company on the terms set out in its offer, and directed the receiver to enter into a written contract with this party for the purchase and sale of the land. The Wahkonsa Investment Company and Furlong & Brennan appealed from this action of the court, claiming that the sale to them was a binding sale; that they acquired an interest in the land under the sale; that the court should have confirmed the sale; and that it erred in ordering the contract set aside, and in recognizing the sale to other parties on bids made after the sale to them, and also erred in directing the receiver to accept the bid of the First & Second Mortgage Corporation.

This is all that is necessary to present the only question that is here for our consideration.

The contention of appellant is:

(1)  That a bidder to whom property has been knocked down at a judicial sale, acquires legal rights which are to be as much protected and enforced as are the rights of other purchasers, and that the court erred in not confirming the contract of sale made with appellants.

(2)   That a successful bidder has a right to insist that his purchase be not set aside by the court, and that he has a right to a confirmation of the same; that there are no facts shown impeaching the sale, and no reason why the court should not have confirmed the same.

(3)   That inadequacy of price which is not gross is not sufficient for refusing to confirm the sale; that the fact that more was offered for the land after the receiver had entered into the contract with these appellants, did not justify the court in setting aside that contract and refusing to confirm the same.

The appellants' contention overlooks material facts: that is, that the receiver was simply the officer or agent of the court; that this sale was not a completed sale; that it was not in the power of the receiver to make a completed sale which would bind the court to its confirmation; and that those who buy at a receiver's sale, such as we have in this case, take with knowledge of the fact that the contract of sale is not binding on the receiver until the same is presented to the court and approved by the court; that a sale such as we have here is a sale without the right of redemption.

In *Terry v. Coles' Exr.*, 80 Va. 695, the Supreme Court of Virginia, quoting from Rorer on Judicial Sales, 30, 55, 56, said:

"Confirmation is the judicial sanction of the court. Until then, the bargain is incomplete. Until confirmed by the court, the sale confers no rights. Until then. it is a sale only in a popular, and not in a judicial or legal sense. The chancellor has a broad discretion in the approval or disapproval of such sale. The accepted bidder acquires, by the acceptance of his bid, no independent right, as is the case of a purchaser at a sale under execution, to have his purchase completed, but is merely a preferred proposer, until confirmation by the court of the sale, as agreed to by its ministerial agent. In the exercise of this discretion, a proper regard is had to the interest of the parties and the stability of judicial sales. By sanctioning a sale, the courts

make it their own. There is a difference between such sale and ordinary auction sales, and sales by private agreement. In case of sales before a master, the purchaser is not considered as entitled to the benefit of his contract till the master's report of the purchaser's bidding is absolutely confirmed."

See, also, *Davis v. Stewart*, 4 Tex. 223, 226; *Henderson v. Herrod*, 23 Miss. 434, 454; *Taylor v. Gilpin*, 3 Metc. (Ky.) 544, 546; *Ohio Life Ins. & Trust Co. v. Goodin*, 10 Ohio St. 557, 563; *Todd v. Gallego Mills Mfg. Co.*, 84 Va. 586.

In Barton's Chancery Practice, 1070, it is said:

"In Virginia, * * * a bid by a purchaser to a commissioner is a bid to the court, and, if accepted, he is bound by it; but the court, and not the commissioner, is the seller, and the confirmation by the court and its direction to convey are essential to the validity of any sale that the commissioner may make."

At page 1094, it is said:

"His bid at the commissioner's sale is a mere offer, and although, after confirmation, his title relates back to the day of sale, yet he has until confirmation to examine into the title, and to inquire if there be any defects in the proceeding."

In *Langyher v. Patterson & Bash*, 77 Va. 473, the Supreme Court of Virginia used this language:

"Confirmation is the judicial sanction of the court; and by confirmation the court makes it a sale of its own; and the purchaser is entitled to the full benefit of his contract, which is no longer executory, but executed, and which will be enforced against him and for him."

In *Brock v. Rice*, 27 Gratt. (Va.) 812, Judge Staples, speaking for the court, said:

"In considering this case, it is important to bear in mind rules of law governing judicial sales. All the authorities agree there is a wide distinction between an application to set aside a sale after it is approved by the court, and an application to withhold a confirmation. A decree of confirmation is a judgment of the court, which deter-

mines the rights of the parties. Such a decree possesses the same force and effect of any other adjudication by a court of competent jurisdiction. But before confirmation, the whole proceeding is *in fieri,* and under the control of the court. Until then, the accepted bidder is not regarded as a purchaser. His contract is incomplete, and he acquires by his bid no independent right to have it perfected."

Further:

"It is very certain that with us the commissioner conducting a sale is regarded merely as the agent or servant of the court, and his proceedings are necessarily subject to its revision and control. Whether the court will confirm the sale must, in great measure, depend upon the circumstances of each particular case. It is difficult to lay down any rule applicable to all cases; nor is it possible to specify all the grounds which will justify the court in withholding its approval."

In *Davis v. Stewart,* 4 Texas 223, at 226, that court said:

"It will be seen that much discretion is left to the judge. If he should believe that the sale was not fair, or that it was not made in conformity with law, it would be his duty to set it aside, and order it to be sold again. He is not required to place upon the record the reasons by which he is governed, either in confirming or rejecting a sale. * * * The purchaser could not be injured; when he bid for the land he was aware that he was purchasing subject to the confirmation or rejection of the sale by the probate judge."

*Taylor v. Gilpin,* supra, confirms the rule stated above, and says:

"The application to the chancellor was not to disturb the sale which he had approved, but it was to reject a bid or proposal which had been offered. This court has, time and time again, held that a purchaser of property under a decretal sale does not acquire any independent right by his purchase until after the same has been approved by the chancellor. He is simply an accepted or preferred bidder; and whether his bid or proposal will be approved

depends upon the sound, equitable discretion of the court having control of the cause."

In *State of Tennessee v. Quintard*, 80 Fed. 829, it was said:

"The cases, both Federal and state, fully establish the rule that Quintard's bid for the property at the special master's sale was only an offer to take the property at that price, and that the acceptance or rejection of that offer was within the sound legal discretion of the court, to be exercised with due regard to the special circumstances of the case. The acceptance of his offer could only have been manifested by an order confirming the sale, and, until that was done, he acquired no title, and there was in his position at the time this petition was filed no element of an innocent purchaser."

In *Todd v. Mills*, 84 Va. 586, it is said:

"But before the court had an opportunity to act, before the sale was reported to the court, another person offered a substantial advance of $12,000, which was satisfactorily secured. There was then before the court no question as to the inadequacy of price to be determined. One hundred and thirty-two thousand dollars was offered for the same property, under the same circumstances, and, so far as the court was concerned, at the same time, for property which the purchaser claimed the right to buy and have conveyed to him at $120,000. * * * * All the cases agree that the court must sell at the best price obtainable; and when a substantial upset bid, well secured and safe, for 10 per cent advance, is put in before confirmation, it is as much a valid bid as if made at the auction."

The decided weight of authority supports the holdings of the courts above cited. However that may be, we are not without authority in our own state in harmony with these rules. In *Central Tr. Co. v. Gate City Elec. St. R. Co.*, 96 Iowa 646, this court recognized the doctrine announced above. It is true that, in that case, the decree required the receiver to report the sale for confirmation, but this added nothing to his legal duty, or to the right of the court

to pass upon and determine whether the sale was one that should or should not be confirmed. In the instant case, the sale to the Wahkonsa Investment Company was for approximately $12,000 less than the bid of the First & Second Mortgage Corporation, and required the carrying back of a mortgage on the land of over $27,000; whereas the bid of the First & Second Mortgage Corporation was a cash bid, and it further appears in the record—though it was not in the decree—that the proposed purchasers, the Wahkonsa people, were informed by the receiver that whatever bid they made and whatever contract was entered into were subject to the approval and confirmation of the court; and this was in the contract which the Wahkonsa people are now insisting was binding without the confirmation of the court.

The holding of the court from which the appeal was taken is in harmony with these decisions. We find no ground for interfering with its judgment, and its action is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.