487 P.2d 1338

In the Matter of IDAHO SAVINGS AND LOAN ASSOCIATION, INC. et al., Plaintiffs-Respondents,

v.

AMERICAN REPUBLIC FINANCIAL COR-PORATION et al., Defend-ants-Appellants.

No. 10815.

Supreme Court of Idaho.

July 29, 1971.

Roberts & Poole, Boise, for appellants.

J. Dennis Faucher, Boise, and W. Anthony Park, Atty. Gen., and Richard H. Greener, Asst. Atty. Gen., Boise, for respondents.

SHEPARD, Justice.

This appeal challenges the validity of a trial court order confirming the sale of certain assets of a Savings and Loan Association which was in receivership.

In 1966 the Idaho Savings and Loan Association (hereinafter the Association) was placed in receivership and the district court entered its order appointing the Commissioner of Finance of the State of Idaho as Statutory Trustee and Receiver and further appointing Robert D. Barbour Conservator and Statutory Agent of the Association. A large percentage of the assets of the Association were disposed of during the following four years and the proceeds therefrom distributed to the shareholders (depositors) of the Association. The disposition of those assets and the payment to the shareholders is not in question herein.

In early 1970 the Commissioner and the Conservator concluded that a bulk sale of the remaining assets of the Association would best serve the interests of the depositors and the stockholders of the Association. After some notice, advertising and solicitation of offers, a joint offer to purchase the remaining assets was received from Continental Life and Accident Company and Western National Corporation. Those entities combined their bids to cover all of the remaining assets of the Association. Thereafter the Commissioner and the Conservator petitioned the court below to approve those offers. The hearing was held thereon in March of 1970 at which representatives of various shareholder and depositor groups were present together with representatives of Com-Tech International, Inc., a Nevada corporation. At the hearing a continuance was asked upon the grounds that further offers, and specifically one from Com-Tech, would be forthcoming. That motion for continuance was denied. The petition of the Conservator and the Commissioner for approval of the existing offers was also denied and the district court noted that there had been inadequate advertising, notice of the proposed sale and solicitation of offers. The court also noted a tentative bid from an additional party to purchase the assets in a higher amount than had been offered by Continental and Western National.

Thereafter the Commissioner and the Conservator engaged in readvertisement of the proposed sale of the assets. That advertisement was on a broad base throughout the entire United States in both general and banking periodicals and newspapers. Those advertisements and notices of sale stated the "total estimated value" of the assets and fixed July 1, 1970, as the deadline for submission of offers to purchase. It was further stated and required that all offers be for cash and be accompanied by a written bank commitment.

As of the deadline of July 1, 1970, the only offer received was that of Continental and Western which offer, following negotiations with the Conservator and Commissioner, was clarified and amended in some respects. On July 6, 1970, an offer to purchase was received from Com-Tech. That offer involved a stock-bond-cash option and was not accompanied by a bank commitment. On August 6, 1970, a further offer was received from Com-Tech offering payment in cash and was supported by a conditional bank commitment. At a still later time the condition upon the bank commitment was removed and still later, after the hearings had begun upon the petition for confirmation, the amount of the offer by Com-Tech was raised.

The Commissioner and the Conservator concluded that the Continental-Western bid to purchase the assets should be accepted and again petitioned the court below to accept and confirm the bid of Continental-Western. The lower court found that the Com-Tech bid was the highest bid by the amount of $186,794.44 and this finding is not questioned herein. However the district court held that it would accept the bid of Continental-Western and confirmed sale to it on the condition that its offer be raised to the same amount as the offer of Com-Tech. Continental-Western did so raise its offer and the sale was confirmed. Appellants, who are foreign corporations holding either deposits or stock in the Association, have appealed from the order of the trial court.

Respondents in this case argue in effect that appellants have no standing on this appeal since they have and can show no injury resulting to them from the order of the trial court. Respondents point out that since appellants were not the persons who sought to purchase the assets they have not shown injury by confirmation of the sale to Continental-Western and further that since the court ordered Continental-Western to match the bid of Com-Tech as a condition precedent to confirmation that appellants as depositors or stockholders in the Association will receive exactly the same regardless of whether the sale had

been made to Continental-Western or to Com-Tech. While the position of respondents may be correct we do not pass on their contention since the issues raised by appellant are dispositive of this appeal.

Appellants in effect raise only the correctness of the procedure utilized by the district court as assignments of error. The procedures complained of by appellants may be summarized as follows:

(1) the advertisement and solicitation of offers by the Commissioner and Conservator under the suggestions made by the court;

(2) the petition by the Commissioner and Conservator to accept the only bid which was received within the limitations of the requirements of the solicitation;

(3) the allowance of new offers and amendment of old offers in open court;

(4) the selection of Continental and Western as purchasers with confirmation of sale to them dependent upon Continental and Western raising their offer to match that made by Com-Tech.

There appear to be generally three doctrines regarding the consideration of a higher offer received after the beginning of confirmation hearings. The first doctrine is to the effect that when a higher bid has been received confirmation of the lower offer should be refused and the bidding should be reopened. The second theory suggests that an offer made in a larger amount after the sale or auction but prior to confirmation is not sufficient reason to refuse confirmation of the offer received at the sale or auction. The third doctrine suggests that the entire matter of confirmation in circumstances such as in the case at bar should be left to the court to be confirmed or not according to the discretion of the court. See generally Annot. at 11 A.L.R. 399 and 152 A.L.R. 530.

It appears that this precise situation has never been presented to the Idaho Court. However a somewhat analogous factual background is found in Gibbs v. Claar, 58 Idaho 510, 75 P.2d 721 (1938). There, the district court had received a petition from the trustees of a defunct corporation to confirm a $4,000 offer received for the remaining assets of the corporation. At a hearing held thereon four offers in larger amounts were submitted. The highest bid then before the court was confirmed by the trial court and upheld on appeal. The court in Gibbs v. Claar, *supra*, stated:

" 'The law appears to be well established that a trial judge in equity proceedings, exercising authority over a sale of property in the control of the court, has discretionary power to modify all orders affecting such sale, by subsequent orders.' * * * 'It may be stated generally that there is a measure of discretion in a court of equity, both as to the manner and the conditions of such a sale, as well as to ordering or refusing a resale. The chancellor will always make such provisions for notice and other conditions as will in his judgment best protect the rights of all interested, and make the sale most profitable to all; and after a sale has once been made, he will, certainly before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted.'

"The confirmation of a judicial sale is a judicial act necessitating the exercise of discretion. This is not a discretion to be arbitrarily exercised, but is a sound, judicial, reviewable discretion." 58 Idaho 510, 520, 75 P.2d 721, 1938.

The law and language in *Gibbs* is consistent with the third theory outlined above. If this Court were to adopt the first theory as noted above in cases such as under consideration herein a higher bid by any amount would require refusal of confirmation and reopening of the sale with the necessary readvertisement and passage of time. Adoption of the second theory applied to the case at bar would require confirmation of a lower bid and denial to the depositors of additional amounts of money. We note at this point that the paramount interest in this matter is and must be the welfare of the depositors of the Association who have for such a long period of time·

been deprived of a portion of their savings. The Association passed into receivership in 1966 and since that time the depositors in the Association have through no fault of their own been deprived of their savings. The best interests and welfare of the depositors of the Association will be served by the receipt of the largest return possible from the sale of the assets in the most expeditious manner possible consistent with the necessary statutory procedures. That interest of the depositors will not be served by permitting last minute higher bids, denial of confirmation and subsequent readvertising and reopening. An end must come. Neither will the best interests of the depositors be served by requiring confirmation of a lower bid and arbitrary rejection of a higher bid.

The statute deemed by the parties in the lower court to be controlling herein regarding the powers of the Commissioner is I.C. § 26–908 which recites the powers of the Commissioner of Finance upon the closing of a bank and which states in pertinent part:

"* * * the commissioner is authorized to collect all moneys due to such bank, and to do such other acts as are necessary to conserve its assets and business, and he shall proceed to liquidate the affairs thereof. He shall have general and inclusive power and authority, except as otherwise limited by the terms of this act, to do any and all acts, to take any and all steps necessary, or, in his discretion, desirable for the protection of the property and assets of such bank and the *speedy* and *economical* liquidation of the assets and affairs of such bank and the payment of its creditors * * *. He may institute, in his own name as commissioner, or in the name of the bank, such suits and actions and other legal proceedings as he deems expedient for such purposes, and by making application to the district court of the county in which such bank is located, or to the judge thereof, in chambers, may procure an order to sell, compromise or com-

pound any bad or doubtful debt or claim, and to sell and dispose of any or all the assets * * *." (Emphasis supplied)

It is apparent therein that the intent of the Legislature was to provide both the Commissioner and the district court with broad discretion in the dissolution of a closed bank. There is no basis therein for the suggestion that any rigid procedure must be followed nor do any other sections of any other statutes relating to the closing of banks offer any further inhibitions upon the discretionary area within which the court and the Commissioner may act.

We therefore reject the contention of appellants that the Commissioner was required to obtain from the district court, prior to any solicitation of offers, an order setting forth the exact form for the submission of offers and deadlines to be observed. Under the statutes and the facts of the case at bar the Commissioner herein was acting as an extension of the court. No procedure suggested by appellants herein was followed in Gibbs v. Claar, *supra*, and appellants present no compelling or logical reason for adoption of such a procedure in the case at bar. In the procedure apparently contemplated by the statute and utilized by the Commissioner and Conservator herein, the trial court may in its discretion confirm or refuse to confirm the offers. In the case at bar such actually took place when the trial court refused to confirm the offer upon the initial petition of the Conservator and Commissioner since the trial court concluded that sufficient advertising and notice of the proposed sale had not taken place.

Turning to appellant's contention that the trial court had no authority or discretion to permit Continental and Western to advance its bid in open court to meet the offer of Com-Tech, we reject that assertion. Had the court decided that Continental-Western was the highest in qualifications its bid, even if lower in amount than Com-Tech, could have been accepted. 2 Clark on Receivers (3d Ed.); see generally Annot. at 11 A.L.R. 399 and 152

A.L.R. 530. Keeping in mind that the prime consideration in this matter was the best welfare of the depositors, it would seem highly illogical to suggest that the trial court could accept the lower bid of Continental-Western because of better qualifications but should have rejected the increase in Continental-Western's bid to meet that offer of Com-Tech. As stated in Saunders v. Stults, 189 Iowa 1090, 177 N.W. 516, 518 (1920):

> " 'A decree of confirmation is a judgment of the court, which determines the rights of the parties. Such a decree possesses the same force and effect of any other adjudication by a court of competent jurisdiction. But before confirmation the whole proceeding is in fieri, and under the control of the court. Until then, the accepted bidder is not regarded as a purchaser. His contract is incomplete, and he acquired by his bid no independent right to have it perfected.' "

Since the ultimate bids of Com-Tech and Continental-Western were equal in amount the trial court could have awarded the sale to Continental-Western on the basis of its higher qualifications. The record indicates on the one hand that Continental-Western had shown solid financial status and conscientious compliance with all the requirements of the Commissioner and Conservator in the submission of bids and throughout the proceedings. On the other hand Com-Tech was of almost unknown financial status, although it eventually had acquired the bank commitment. It had shown throughout the proceedings either unwillingness or inability to promptly and conscientiously meet all the requirements laid down by the court and the Commissioner and the Conservator.

Appellants contend that the sale should not have been confirmed by the trial court until "all other offers had been thoroughly investigated." The record discloses that after extensive advertisement of the proposed sale only two bids were received, those of Continental-Western and of Com-Tech.

The order and judgment of the trial court is affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, DONALDSON, and SPEAR, JJ., concur.